United States v. Milne May it please the court, Mr. Paula, my name is Rachel Nathanson and I represent John Leroy Milne. I'd like to attempt to reserve up to three minutes for rebuttal. We have made various arguments in our brief in chief, but unless your honors have other questions, I would like to focus my argument on two primary areas. First, the district court made clearly erroneous factual findings in its denial of the motion to suppress warranting reversal. And second, no reasonable jury could find beyond a reasonable doubt that Mr. Milne was responsible for more than 100 kilograms of marijuana. To start with the matter of suppression, in this case, the government conceded that there was no reasonable suspicion for agent Dafayette's contact with Mr. Milne. Instead, they insist that it was consensual. Well, there's also a dispute in the evidence, isn't there? One says one thing, one says another, and that the motion to suppress hearing the judge chose to believe one over the other. Yes, your honor, the judge, the judge can't do that. The judge can certainly make a credibility finding and that is what he did in this case. However, the judge ignored the physical evidence that was consistent with what Mr. Milne testified to, which was that he pulled over because agent Dafayette engaged his front grill emergency lights. The physical evidence that the district court ignored, never even mentioned in his findings of fact and conclusions of law, is a photograph presented showing that the front grill emergency lights were on at the scene. That's Exhibit 19. It was at a different time taken at a different time, though. That photograph was taken approximately an hour after the original encounter or stop of Mr. Milne. However, I'll point to agent Dafayette's testimony, which ultimately was, I may have turned them on. I don't remember turning them on. I could have accidentally turned them on when I was in my vehicle. I don't remember turning them on. So even though agent Dafayette did originally testify that he did not turn on his front grill emergency lights, I confronted him on cross-examination with Exhibit 19, showing that his front grill emergency lights were on, that he had to concede that he did turn them on. And the question was, when did he turn them on? And his ultimate testimony was he had no idea when he turned them on because he testified very specifically that while he didn't remember. He testified, yeah. I could speak right into it. Does that help? Sorry, I lost my train of thought. I think that he testified specifically that he did not, while he was following the defendant and while he was pulling him over, he was quite certain that he did not activate any lights. It may be that at some point before that photo was taken, an hour later, that he did activate his lights. And he basically said, I just don't remember. But he did testify specifically, I did not, during the pursuit or while he was pulling over. So that's on the record. And the trial court made that finding. In response to leading questions from the government, agent Dafayette did say, yes, ma'am, I had never turned on the lights. Right. Why wasn't the district court entitled to rely on that? He found the officer more credible. There is other physical evidence, in addition to the light being on, that is important to consider. And that is the manner in which Mr. Milne pulled off the highway. Exhibit 20 is indicative of how he pulled off the highway. And that was parallel to the highway. And he pulled in perpendicular to the actual parking spots at the Rodeo Tavern, consistent with someone who's being pulled over and not somebody who is who is trying to go to that tavern. This was also a tavern. But he said that's what he was doing. He pulled over or he stopped his vehicle because he was going to get a drink. He was thirsty. And that's why he was there. Right. That was agent Dafayette's testimony of what Mr. Milne stated. Mr. Milne testified that he was not stopping to get a drink. If he had wanted to get a drink, he would have stopped at the grocery next door that he had been to the day before. The manner in which he got out of the car, too, is indicative of you say grocery next door. There was a grocery adjoining this tavern immediately before reaching the tavern. There was a grocery store that my client had testified to going to the day before and which did serve drinks and was open early. Some distance away from this tavern. Right. It was the building immediately immediately next door to it. It was probably 50 to 100 yards away. OK. Thank you. Yes. So he when he pulled off in response to his testimony that he was pulled over by the flashing lights. Mr. Milne did not get out and walk to the tavern door like he was going to get a drink. He had been followed for one and a half to two miles. The testimony showed he was not speeding. He was not driving radically. And he thought, according to his testimony, that, well, this agent is following me because there's something wrong with the back of my vehicle. So he gets out. He goes to the back of his vehicle immediately to check out what is wrong with this $750 Ford Explorer I've just bought. In addition, your honors can keep in mind that the other agents never testified one way or the other, either, whether the front grill emergency lights were on when they arrived. Even with the deference owed to the district court and the evidence viewed in the light most favorable to the government, the factual findings are clearly erroneous because Mr. Milne's testimony that he was pulled over by the front grill emergency flashing lights and the physical evidence that the light was indeed on, the agent didn't know when he turned it on. And the way in which he parked that was consistent with pulling off the highway in response to being pulled over rather than going to frequent a store shows that the finding that the agent never turned on his front emergency lights while following Mr. Milne was clearly erroneous. If your honors have no other questions, I would like to move on to my second topic. Well, I guess my only question is, your position seems to be that the judge should have believed my client. In conjunction with the physical evidence. Well, if you believe that it was that the client said that it was on before he pulled him over, but if it was not on before he pulled him over, you're back to the same situation posed before. He didn't believe my client. He believed the other guy. And the judge did not discuss the physical evidence in his findings of fact and conclusions of law, which we think is clearly erroneous, your honor. All right. With respect to life, the court affirms the denial of motion to suppress and find sufficient evidence for conviction. We asked the court to remand for resentencing on the quantity of marijuana, specifically for less than 50 kilograms of marijuana. Is that because they didn't test every every bundle? We're not saying that the government necessarily had to test every bundle, but I think that we can all agree that the bundles in this case were inappropriately handled. Even the district court did admonish the government for cutting open those 10 untested bundles during in the courthouse, during the defense case, in order to try to field test and reopen the case. The government. Well, they never did that, though. The court wouldn't let them do that. They did reopen the bundles. The court did not allow the government to reopen its case, however. The government had realized that after Agent Hopkins took 11 samples from only one of the 11 bundles, it had failed to use a reasonably reliable technique to provide for the contents of the 11 bundles. Well, isn't there a logical inference that if you have 11 bundles, all identical and one of them is just 100 percent marijuana, can't the jury infer? No, Your Honor. Circumstantially, that that was also marijuana? No, Your Honor. The case law is pretty clear from all of the circuits, and I will cite to the United States versus Garner from 2007 in this circuit, that a reasonably reliable technique requires random selection of samples to determine or to extrapolate the identity of the whole. The government is trying to say that we can they can use a specific percentage of the whole that was tested, but that's never the test in any of the cases. And in no case except for one unpublished one paragraph affirmance from the Fifth Circuit in United States versus Pena, which includes a forceful dissent that is aligned with a United States versus Garner. In no case in this country has this the same situation other than Pena happened where 11 samples were taken from only one bundle out of the whole. And in that case, the Judge Dennis found that in his dissent that the principles of random sampling and logic were violated when only one bundle was tested, and that the mere fact that similar size and wrapping applied to the other bundles could not prove beyond a reasonable doubt the contents of all of the bundles, nor could a jury reasonably determine the weight of even a single bundle. That was the same in this case. The government never presented any testimony as to the size or weight of any one bundle. But but you're saying that if you prevail here, we should remand for resentencing for the lesser verdict. But to get to that point, we'd have to have some kind of quantity of one bundle, wouldn't we? Yes, Your Honor, well, the only quantity that we have is that the chemist testified that 1.034 kilograms of marijuana were actually tested. They came from one bundle. We don't know the size of that bundle, but what we know for sure beyond a reasonable doubt is 1.034 kilograms, and that's less than 50 kilograms of marijuana. In terms of circumstantial evidence, the case Sanchez de Fundora cited by the government is really not on point. The government there was able to prove the identity of seven, the identity of the drug in seven cocaine transactions, aside from the one in which there was actually testing done based on physical appearance, testimony of physical effects of the substance, testimony of how the substance was used, the high price that was actually paid in those seven other instances, and the substance being called cocaine in the defendant's presence. Here, the bundles were all still sealed. There was no evidence of a high price actually paid and no evidence of the substance being called marijuana in Mr. Milne's presence. In addition, the smell and appearance is not going to be sufficient to be able to determine the substances in the other 10 bundles. First of all, no one could see into the bundles. They remained wrapped in duct tape the entire time. And in terms of the smell, the district court said himself, I can't tell if the smell that I'm perceiving is coming from one bundle or from all 11 bundles. And the agents, they testified that they smelled marijuana, but there's no testimony that any of them isolated the bundles and smelled them individually so that they could tell that it was marijuana. And in addition, Your Honors, there's no indication that all of the jurors knew what raw marijuana smells like. That's really building inference upon inference for the jurors to determine that all of these bundles were marijuana. So, Your Honors, the main point of this is all of the case law, with the exception of that one unpublished Fifth Circuit opinion, requires random sampling in order to determine the substance or extrapolate the substance of a whole. That was not done here, sorry. And that would be if you had a pile of marijuana plants, for instance. You had a pile of them, not in bundles, just a pile of them. And you pull out random samples of the pile. That's the kind of case that you're describing. Here we have individually wrapped bundles. Is that a difference? If they're the same packaging and you know what's in one, isn't that circumstantial evidence that we know everybody, all other bundles are the same? If you could see the plants, that would actually be more evidence that they were all marijuana. I'm trying to get to your point of the random sample idea. Those are the cases where you have a large amount of something. And so you go into different parts of that something and try to determine what is the whole. Here we have a different situation because you have separate packaging. Your Honors, we cited multiple cases where there are bundles versus plants and even cocaine rocks. And in every single one of them, more than one bundle was tested. One bundle has never been found to be sufficient. In a similar case, three out of 10 was found to be sufficient. But we also have no evidence that this one bundle was selected randomly. So we would ask the court to abide by its previous decision in United States versus Garner and follow the reasoning in United States versus Pena. Thank you. Looks like I'm out of time. Thank you. I'm sure. May it please the court, John Balla for the United States. Milne told the district court and the jury in this case a meandering story about how he ended up with almost 250 pounds of marijuana and an illegal alien in the back of his SUV. The district court aptly described that story as a fantastical tale. Now he tells a story about numerous errors that he alleged occurred at every single stage of the significant proceedings in the district court. Both the district court and the jury rejected his fantastical tale below and the court here should reject his fantastical tale by affirming his conviction and sentence. I'll begin by addressing the first two issues that Milne argues here and that is the clear factual finding on suppression and the error, the alleged error about the sufficiency of the evidence on drug quantity. I think the panel appropriately pointed out that Agent Defiat's testimony was entirely clear to support the finding that the district court made. The relevant finding here was that Agent Defiat never activated his emergency lights or sirens while following or while parking behind Milne and Agent Defiat's testimony was clear on that. And further, it's not surprising that the district court didn't discuss this alleged photo that was supposed to be the smoking gun on that issue when Agent Defiat testified that that photo wasn't taken until an hour after the events about which the district court was making the finding. And so the district court's failure to discuss that specific photo was not clear error given that it was almost entirely irrelevant on the finding that it was making. Moving on to the issue about the sufficiency of the evidence on drug quantity, it's settled law that the government can prove drug quantity through circumstantial evidence, not just through direct scientific evidence in the form of a chemist testifying that I've tested these bundles and they contain marijuana. Milne argues that the procedure here wasn't random, but the trial evidence actually does give rise to a reasonable inference that this was random. All the bundles were taped and they looked exactly the same. Agent Hopkins, the DA case agent who extracted the samples, when shown initially a photograph of the bundles at trial, testified I can't tell from this photo which bundle I took the sampling from. And it wasn't until he was shown additional photos with other parts of the bundles that he was able to identify. Which bundle he took the sample from. And so given that they all looked identical and that Agent Hopkins could initially tell which of the 11 bundles he sampled, I think it's a reasonable inference that the sampling was indeed just taken from one of the 11 bundles that all looked identical, that were all shaped identically. Now proving that that one bundle had marijuana in it. Right. And proving that the sampling, that he didn't pick the one that looked the most like marijuana because they all looked the same and he couldn't even tell from the photograph which one he took the sample from. How much did each bundle weigh? There was no there was no testimony and there's nothing in the record indicating how much each individual bundled weighed. However, there was there was testimony that they were all wrapped identically and that they were all roughly the same size. And how much did they collectively weigh then? 111 kilograms. And how many bundles were there? There were 11 bundles. So could you theoretically divide 11 into 110 and figure out what each each bundle was? I think that that would be that would be a reasonable inference that the jury could draw or that you could draw from the record. And that would be about 10 kilograms per. So our position is that the direct scientific evidence was enough in this case, just based on the percentage of the sampling. The fact that it was only one bundle of 11 is still about 9 percent of the substance that was tested. And again, the fact that it was just one bundle doesn't make a difference when past courts have affirmed smaller percentages of a total substance that was tested. The fact that it was one of 11 doesn't make any difference when, for example, in March on the Fifth Circuit affirmed 22 of 498. That's that's a smaller percentage. The fact that it was 22 rather than one makes no difference when it was still a smaller percentage of the overall substance that was seized that was tested. And so the direct scientific evidence by itself is enough to show is enough for any reasonable jury to conclude that all 11 bundles contain marijuana, thus getting to the 100 kilograms or more threshold. But even aside from the direct scientific evidence, the court heard and the jury heard and received ample circumstantial evidence that the remaining bundles contain marijuana. First, they heard that they were wrapped identically and that they that they were all seized from the same place. They heard testimony that they that they all smelled consistently with the agent's experience in like marijuana. Was there an agent that said that he smelled or she smelled each bundle and said they all smelled the same? Again, I think it's a reasonable inference from Agent Hopkins's testimony because he was the one who physically took custody or he took custody of the bundles along with another DEA agent from Border Patrol. When the case was transferred from Border Patrol to DEA, he was the one who extracted the samples and then took physical custody of them. And he testified his his testimony was that the sample that he there the bundle that he took the samples from smelled like marijuana and the other 10 bundles smelled the same. Now, I think you can reasonably infer from that that at least there was one bundle and then another 10 that all smelled like marijuana. And I think it's also reasonable to infer that each of the 10 also smelled like marijuana from his testimony, given that he was in custody of those bundles and he was the one testifying to that fact. You would agree that probably the better practice would be to check a couple more bundles, maybe a little bit out of each? Of course. And I think that it was although it's not exactly clear from the record, I think it was just based on Agent Hopkins's mistaken view about what DEA policy required regarding the sampling. Given that he took 11 samples and that there were 11 bundles, I think that he probably mistook a requirement that he take one sample from each bundle and instead thought that he could take them from one bundle. But that doesn't necessarily mean that the evidence wasn't sufficient for any reasonable jury to conclude that all 11 did contain marijuana. And the jurors actually got to experience the bundles of marijuana themselves. They got to see the marijuana from a few feet away. The district court described in the record the jurors' impression upon that marijuana entering the courtroom. They said that they all recoiled in disgust and that there were people covering their faces. And so it's clear that they were able to smell what was inside those bundles and evaluate whether that smelled like marijuana. Touching on the evidentiary issues that Milne raises in his brief, he argues that the district court abused its discretion, its wide discretion, under Rule 403 in admitting the actual bundles of marijuana themselves and in admitting testimony about heroin that was found on Milne's person. The district court didn't abuse its wide discretion in making either decision, and even if it did, the errors were harmless. Regarding the actual bundles... How is the admission, permitting the admission of testimony regarding this defendant's possession of marijuana, how is that admissible? I'm sorry? How is that admissible, to have the heroin evidence put in this trial? Because it goes to lack of mistake, Your Honor. We cite Edwards... Was it offered for that reason? It was actually not offered by the government. It was offered by the co-defendant. What did the co-defendant argue? He argued that it went to his credibility in the sense that it showed that he was on hard times and that he would have a motive to traffic drugs. And that's not necessarily the ground on which we're defending it here. And what did the district court rule in accepting that evidence? He stated that he simply stated that he believed that this was classic 404B evidence, and so it was going to come in. I wonder what that means. I don't know, Your Honor. Maybe it means that he was going on his gut based on prior 404B determinations. Meaning it was more probative than prejudicial? Well, it may not be more probative than prejudicial. It just needs to not have its probative value substantially outweighed by the... So that's what we're supposed to understand that he meant? Well, in stating that it's classic 404B evidence, I think that may have been more a statement about its relevance. Because, of course, under 404B, it has to be offered for some purpose other than propensity. And it was admissible for a non-propensity reason in this case, and that is lack of mistake. Now, this court in Edwards, it did find that it was error or did conclude that it was error to admit evidence of a prior drug possession conviction in a current drug trafficking trial. But it specifically noted that lack of mistake was not an issue in that case. And lack of mistake was an issue in this case. In Edwards, it was a defendant who was charged with possessing ecstasy with intent to distribute it. And that was based on ecstasy pills found in another person's bedroom. And his claim of trial was, I never possessed that ecstasy in the first place. It's a much different case here. Milne, of course, had to acknowledge that he possessed the marijuana that was in the back of his SUV. The only contention was that he didn't knowingly possess it and that he mistakenly believed that it was hay. So lack of mistake was indeed a critical issue in this case. He acknowledges that he transported something. And the fact that he possessed heroin on his person, I think just based on inferences from common sense, indicates that he was probably familiar with what marijuana smelled like. He acknowledged he could smell. It's character evidence, isn't it? It's not evidence. You're a person that possesses drugs, so you probably possess this. You probably have this. I respect marijuana. Respectfully, Judge Briscoe, it's not evidence of his character. It's not saying that just because he's a he possesses heroin, he possessed heroin separately, that he necessarily possessed this marijuana or necessarily knew that it was marijuana because he's just that kind of bad guy. It's more that evidence that somebody possessed heroin tends to show that they are familiar with the world of drugs and that when he claimed I thought that that those bundles in the back of my SUV smelled like hay. But that wasn't true. In fact, he knew that the smell emanating from them was marijuana. That's a lot of a lot of dots to connect, isn't it? To get from heroin to knowledge of marijuana, to know that this was marijuana, to know that it's a lot of marijuana, to know that he's distributing heroin. I mean, people often speak of marijuana as a gateway drug. And so I think it's a reasonable inference that if he's he's already got past the gateway, apparently he has he has heroin or that if he has heroin and he's using heroin, then he's been familiar with marijuana. At some point in his life, it's a reverse inference. And OK, but even if even if it were error, it was harmless because of all the overwhelming evidence listed in the United States is brief. That would probably take five minutes to recount here and further because he introduced his own evidence that was just as prejudicial and and thus blunting any impact that the heroin had. When Milne admitted first thing on direct examination that he had a prior conviction for possessing amphetamines and he never requested a limiting instruction to the jury. Is there indication in this transcript whether or not he had decided to testify before the evidence of his heroin possession came into evidence? No, there is no indication that he had made that decision beforehand. Further, admitting the bundles of marijuana themselves was an error and the district court didn't abuse its discretion under Rule 403 because they were highly probative of his knowledge. Both parties cite hooks in their briefs and there's a little bit of a dispute about who about which side is helped by hooks. And I think that it's actually Milne who's misreading that case. Now, true enough, hooks said in that case involving PCP and a hidden compartment in a car that without any foundation that the defendant was familiar with the smell of PCP, then it couldn't be enough by itself to provide sufficient evidence to convict him for knowing possession of PCP. But then it went on in the rest of the opinion to state that that evidence could be considered along with all the other circumstantial facts in showing his knowledge. And then it went on to affirm the conviction. And that's what we're arguing here is that even without a foundation that Milne was familiar with the smell of raw marijuana versus the smell of burning marijuana, the fact that the jury could consider the smell of that marijuana along with other circumstantial evidence of which there was plenty in assessing whether he knowingly possessed the marijuana. Further, the bundles weren't misleading without the burlap backpacks in which they were seized. Partly because Milne acknowledged himself that he could smell what was in the back of his SUV. He just claimed that it smelled like hay. And so that made the qualitative nature of the smell rather than just the smell's intensity relevant at trial. And one of the agents who testified at trial testified that removing the burlap backpacks didn't change how the marijuana smelled. It just changed its intensity. But it still smelled the same when you took the backpacks out. And so given that his claim was he thought it smelled like hay and given that there was testimony that removing the burlap backpacks didn't change a qualitative nature of the smell, it was relevant for the jurors to actually smell those bundles and assess for themselves whether they believed Milne that it smelled like hay. And even without a foundation showing that the jury that an average juror knows what marijuana smells like and the average juror probably knows what hay smells like. And so they could smell those bundles in southern New Mexico. In southern New Mexico. Well, I think that's a bridge too far. I think there's more likely for people to know what marijuana smells like than what hay smells like. Well, this is Colorado, after all. Well, and I'm in Kansas on a farm. Don't mess with me. Go ahead. So. So the purpose for which they were offered, they were still in substantially the same condition, even without the backpacks. Now, these backpacks, is it glorified burlap bags that have been tied together so they can be carried? Yes, Your Honor. And so it's the generic burlap that is usually a breathable burlap, as we normally think of burlap? Yes, it was just ordinary burlap, as you can tell from the photos. They show on the straps, don't they? They do, yes. And then sort of carry them on their backs with the sewn on straps. And further, they were probative of the substance's identity. Of course, this was a trial where the United States had to prove that the substance that he possessed was actually marijuana. And so it became very relevant later on when Milne challenged the quantity. And it was relevant from the start when we had to show identity to introduce the actual bundles and show the jury, look, this is what we're alleging. He possessed that we're claiming as marijuana. Go ahead. You can see it yourself. Did the co-defendant say it was marijuana? I see that my time is up. Go ahead. Just give me an answer. Yes. He stated that he figured it was marijuana. He figured it was drugs based on his experience. But he also testified that he couldn't smell it. Couldn't smell it. OK. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted.